UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


LORILYN W.,

                Plaintiff,

       v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 6:19-cv-00925-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Lorilyn W. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, that decision is AFFIRMED.

Plaintiff protectively filed for DIB and SSI on August 7, 2015, alleging disability beginning on April 1, 2014. Tr. 203-12. At the hearing, plaintiff amended her alleged onset date to January 1, 2008. Tr. 33. Her applications were initially denied on December 3, 2015, and upon reconsideration on July 21, 2016. Tr. 70-93, 98-127. Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), which took place on February 14, 2018.  Tr. 31-69.  After

receiving testimony from plaintiff and a vocational expert, ALJ Mark Triplett issued a decision on

July 2, 2018, finding plaintiff not disabled within the meaning of the Act.  Tr. 11-22.  The Appeals

Council denied plaintiff's request for review on May 1, 2019.  Tr. 1-7.  Therefore, the ALJ's

decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R.

§ 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C.

§ 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by

isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-

10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This

court may not substitute its judgment for that of the Commissioner when the evidence can

reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746

(9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational

interpretation, the Commissioner's decision must be upheld if it is "supported by inferences

reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)

(citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since August 7, 2015, the alleged onset date. Tr. 13. At step two, the ALJ determined plaintiff suffered from the following severe impairments: diabetes mellitus with polyneuropathy, obesity, anxiety disorder, depressive disorder, and osteoarthritis of the knee. Tr. 13. The ALJ recognized other impairments in the record, i.e., respiratory disorder, polycystic ovarian syndrome (PCOS), and lumbar disorder, but concluded these conditions did not cause more than minimal limitations. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 14. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 416.967(b), with these exceptions: can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; can occasionally operate foot controls; able to tolerate occasional exposure to extreme heat, extreme cold, pulmonary irritants, and workplace hazards such as unprotected heights and exposed moving machinery; requires the ability to alternate between standing and sitting at will while remaining on task; can perform simple, routine tasks; and can tolerate occasional contact with the general public. Tr. 15-16.

At step four, the ALJ found plaintiff unable to perform past relevant work. Tr. 20.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy,

including production assembler, electrical accessory assembler, and office helper.  Tr. 21.  Thus, the ALJ concluded plaintiff was not disabled.  *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) rejecting her subjective symptom testimony; (2) improperly evaluating the medical opinion evidence; (3) improperly rejecting the "other" medical source statements of LCSW Janette Stringer; and (4) failing to account for all of her limitations in the RFC.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to

"credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 17. However, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 17. Each of these reasons is addressed in turn.

### A.  Diabetes (Noncompliance and Effective Treatment)

The ALJ observed that the medical evidence did not support plaintiff's reports of disabling Type II diabetes. Tr. 18. First, the ALJ found that plaintiff's diabetes was "poorly controlled," and that despite being treated with oral medication, plaintiff's blood sugar levels were high, and she "reported that she was not entirely compliant with her medication." Tr. 17 (citing Tr. 580, 675). An ALJ may reject a claimant's subjective symptom testimony based on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039; *see also* SSR 16-3p ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

The two treatment notes cited by the ALJ indicate that plaintiff sometimes forgot to take Metformin, a diabetes medication, and she once lost her glucometer. Tr. 17 (citing Tr. 580, 675). Plaintiff argues "[t]hose two records do not document intentional noncompliance." Pl. Br. 19. Even if these incidents were unintentional, they do not constitute "good reasons" under the regulations for failing to follow prescribed treatment. *See* 20 C.F.R. § 404.1530(a), (c) (listing "good reasons" for failing to follow prescribed treatment, such as the treatment is contrary to the claimant's religious beliefs or the same procedure was previously performed with unsuccessful results). Moreover, they are not isolated occurrences. *Compare Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding ALJ may not "selectively" rely on treatment records to reject a claimant's testimony). The longitudinal record contains additional evidence of noncompliance, e.g., plaintiff's diabetes was poorly managed, she was resistant to insulin, and she reported that she avoided taking medication. Tr. 471, 467, 608. Therefore, plaintiff's medical noncompliance is a specific, clear and convincing reason, supported by substantial evidence, for discounting her subjective symptom testimony.

The ALJ next discredited plaintiff's subjective symptom testimony because her diabetic conditions improved with treatment compliance. The ALJ found:

> [I]n September 2017, the claimant indicated that she had been able to lose twenty pounds and that she was trying to get her blood sugars under control. (Exhibit 13F/39). By December 2017, it was noted that her blood sugar readings had gone down since a change in her medication. (Exhibit 13F/5). Thus, it appears that when the claimant remains compliant with diet and medication, her diabetes improves. As a result of uncontrolled diabetes, the claimant has developed peripheral neuropathy in her feet. (Exhibit 6F/36). However, despite complaints of nerve pain, a monofilament test in September 2017 was negative. (Exhibit 13F/4l). There is no other evidence of balance issues or difficulties with ambulation associated with her neuropathy.

Tr. 17. The record reflects that, in December 2017, plaintiff's blood sugar reading went "down by almost 100 points after she started the new medication," Tr. 574, and that, after she lost

weight in September 2017, her monofilament testing was negative, i.e., no peripheral neuropathy was detected in her feet.  Tr. 611; *cf.* Tr. 470 (neuropathy on monofilament testing in December 2015).

In assessing a claimant's symptom testimony, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c).  "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Rhea W. v. Comm'r of Soc. Sec.*, No. 6:17-CV-01895-AA, 2019 WL 2156957, at *4 (D. Or. May 14, 2019) (holding ALJ may rely on a plaintiff's non-compliance with effective treatment to discount her testimony). The fact that plaintiff's condition improved after treatment compliance is a specific, clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

### B.     Knee Pain (Conservative Treatment)

The ALJ discredited plaintiff's testimony regarding the severity of her knee pain on the basis that she was treated "conservatively"

> with medication, for her complaints and [she was] counseled on the need for exercise and weight loss. (Exhibit 6F/26).  She was treated with an injection in her knee as well. (Exhibit 6F/38).  There is minimal evidence of treatment for her knee pain. In September 2017, she was noted as presenting with tenderness in the knee, but no other findings were indicated. (Exhibit 13F/42).  She continued to engage in physical therapy for her knee complaints. (Exhibit l0F).  She noted an exacerbation in her knee pain in December 2017 after kneeling and decorating her Christmas tree, but an examination did not reveal significant findings.  (Exhibit 10F/ 1 ).

Tr. 17.

The record reflects that plaintiff's treatment consisted of nonsteroidal anti-inflammatory drugs ("NSAID"s), an injection, and physical therapy.  *See, e.g.*, Tr. 477, 486, 511-27.

Conservative treatment can be "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d at 750-51 (citation omitted).

Plaintiff argues that the ALJ was required to explain why an injection treatment is not conservative, and contends evidence supports that her treatment options were limited rather than conservative. Pl. Br. 20 (citing Tr. 434). However, courts have upheld conservative treatment findings under similar circumstances. *See Hanes v. Colvin*, 651 F. App'x 703, 705-06 (9th Cir. 2016) (upholding ALJ's conservative treatment finding where the claimant's treatment "consisted primarily of minimal medication [i.e., narcotic pain killers, such as Opana, Fentanyl, and morphine], limited injections, physical therapy, and gentle exercise"); *Baer v. Comm'r of Soc. Sec.*, No. 1:15-CV-01358-SAB, 2017 WL 615194, at *10 (E.D. Cal. Feb. 14, 2017) (upholding ALJ's conservative treatment finding where plaintiff was treated "with NSAIDs, counterforce brace, physical therapy, and corticosteroid injection"). Thus, the ALJ did not err in discounting plaintiff's testimony based on her conservative treatment history and properly rejected plaintiff's knee pain symptom testimony.

### C.    Mental Impairments (Situational Stressors and Activities of Daily Living)

The ALJ discredited plaintiff's testimony regarding the "limitations stemming from her mental health issues" on the basis that her issues were related to "ongoing situational stressors exacerbating [her] mental health issues[,]" specifically "familial and other stressors." Tr. 17, 18.

Social Security disability determinations must be based on medically determinable impairments, not situational stressors. *See* 20 C.F.R. § 404.1505 (disability is inability to work "by reason of any medically determinable physical or mental impairment"); *see also Chesler v. Colvin*, 649 F. App'x 631, 632 (9th Cir. 2016) (holding symptom testimony was properly rejected where claimant's mental health symptoms were situational). Here, as the ALJ observed,

plaintiff's mental health was affected by a number of situational stressors, such as her difficult marriage, worry about finances, and conflict with her stepson and his mother.  *See, e.g.*, Tr. 528-63, 623, 631, 632, 635, 638, 639, 643, 644, 650, 652, 655, 656, 657, 658, 659, 665, 666, 670, 674.  Thus, the ALJ's finding is a clear and convincing reason supported by substantial evidence.  While it is true that plaintiff's mental impairments could have triggered her reaction to situational stressors (as opposed to the other way around), the court may not second-guess the ALJ's subjective symptom evaluation simply because the evidence may have been susceptible of other interpretations more favorable to plaintiff.  *See Tommasetti*, 533 F.3d at 1039.

The ALJ also discounted plaintiff's mental symptom testimony because "her reported activities of daily living suggest that she is able to function quite well despite these stressors. (Exhibit 7E)."  Tr. 18 (citing Tr. 268-75).  The ALJ cited to plaintiff's Function Report, in which plaintiff described preparing meals on a daily basis, doing dishes, laundry, and light housecleaning, attending appointments and shopping, driving a car, and paying bills and handling money.  Tr. 268-75.  In his decision, the ALJ specifically noted plaintiff "was able to care for her family and . . . was busy with errands and preparing meals."  Tr. 17-18.  The ALJ also noted plaintiff was able to travel to the coast by herself and attend a baby shower.  Tr. 18 (citing Tr. 558).  The ALJ properly invoked plaintiff's activities of daily living to illustrate a contradiction with her subjective symptom testimony.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding an ALJ may give little weight to a claimant's subjective testimony if it contradicts the claimant's activities of daily living).

## II.    Medical Opinion Evidence

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must provide clear and

convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

### A.    Dr. Tracy Hardwick

On December 20, 2017, Dr. Hardwick filled out a "Medical Evaluation" form where she indicated diagnoses of diabetes II, joint pain, and left knee arthritis. Tr. 508. Dr. Hardwick opined that plaintiff would be unable to: sit for more than ten minutes at a time, stand/walk for more than five minutes at a time, sit for more than one hour in a day, stand/walk for more than one hour in a day, and lift more than ten pounds occasionally. Tr. 508-09. She further indicated that plaintiff would need to lie down or rest and elevate her legs periodically during the workday, and she would miss work more than four days per month. Tr. 507, 509, 510.

The ALJ gave Dr. Hardwick's opinion "limited weight." Tr. 18. The ALJ pointed to Dr. Hardwick's "relatively brief treating relationship" with plaintiff. *Id.* Dr. Hardwick examined and treated plaintiff only three times from September to December 2017. *See* Tr. 574-77, 580-83, 608-13. The frequency and nature of contact between a doctor and patient are relevant factors in weighing a doctor's medical opinion:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's

medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. §§ 404.1527(c)(2)(i); 20 C.F.R. 416.927(c)(2)(i) (same).

The ALJ also relied on "other evidence in this record," including that Dr. Hardwick's "extreme limitations are not consistent with the objective medical evidence." Tr. 18. Specifically, the ALJ noted plaintiff's "diabetes symptoms improved with compliance and weight loss." *Id.* As discussed above, the ALJ fully developed the record with respect to this finding, and the same reasoning applies here.

In addition, the ALJ found Dr. Hardwick's opined limitations conflicted with "[plaintiff's] report[s] in the records that she was able to go swimming and walking for exercise." Tr. 18-19. Although plaintiff points out that walking and swimming were only therapeutic, Pl. Br. 11-12, the ALJ reasonably inferred these activities were so demanding that they contradict Dr. Hardwick's restrictive opinions, and there is evidence in the record to support the conflict. For example, plaintiff reported to Dr. Hardwick that "she is walking everyday for exercise," plaintiff's physical therapy notes indicate she had a goal of walking for one mile, and the record contains a recommendation that plaintiff walk 30 minutes per day and march in place while swimming. Tr. 366, 514, 524, 608. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including the doctor's own treatment notes. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding ALJ may discount a medical opinion that is not supported by the record as a whole or by objective medical findings).

The ALJ also found Dr. Hardwick's opined sitting limitation of no more than 10 minutes at a time and for no more than an hour per day conflicted with plaintiff's activities.  Tr. 19.  In particular, the ALJ pointed to a December 2017 road trip from Oregon to Ohio.  Tr. 19.   The ALJ reasonably inferred this road trip shows plaintiff is capable of sitting for more than 10 minutes at a time and for more than one hour in a day.  *See Dalton v. Berryhill*, No. 2:17-CV-00443 CKD, 2018 WL 2771262, at *6 (E.D. Cal. June 7, 2018) (holding ALJ reasonably found the plaintiff's long road trip to California indicated she was capable of prolonged sitting); *Alvernaz v. Berryhill*, No. 2:16-CV-2169-EFB, 2018 WL 1567784, at *6 (E.D. Cal. Mar. 31, 2018) (holding ALJ reasonably found an alleged difficulty with prolonged sitting conflicted with plaintiff's report that she took a two-week road trip to Minnesota); *Buzby v. Astrue*, No. 1:12-CV-00381-REB, 2013 WL 4807011, at *6 (D. Idaho Sept. 9, 2013) (holding treating physician's opinion that "sitting" and "maintaining any one position for a prolonged period of time" would bring about plaintiff's pain conflicted with evidence that plaintiff was able travel, including "go[ing] on "a long road trip to New Jersey").

In sum, the ALJ's reasons for discounting Dr. Hardwick's opinion are supported by substantial evidence in the record.

**B.       Dr. Arthur Lewy**

Dr. Lewy reviewed the medical record upon reconsideration in July 2016.  Tr. 110-12.  The ALJ gave Dr. Lewy's opinion "some weight[,]" finding that "the claimant's limitations are not fully consistent with . . . the claimant's self-reported activities."  Tr. 19.

Plaintiff asserts the ALJ erred by failing to consider Dr. Lewy's opinion that plaintiff "required 'supervision delivered in a supportive fashion.'"  Pl. Br. 14; *see* Tr. 111.  Dr. Lewy's opinion, however, did not contain a requirement.  Dr. Lewy's imperative was that plaintiff is

"moderately limited" in her ability to "accept instructions and respond appropriately to criticism from supervisors." Tr. 111. In further explaining plaintiff's social interaction capabilities and/or limitations, Dr. Lewy indicated plaintiff "can accept supervision delivered in a supportive fashion." Tr. 111. Dr. Lewy did not say that plaintiff "required" such supervision.

The ALJ is not required to incorporate medical opinions that are mere recommendations and not imperatives. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008). Where a recommendation is considered in conjunction with an imperative, the ALJ may choose to rely primarily on an enumerated limitation. *Id.* The ALJ also is "entitled to draw inferences logically flowing from the evidence." *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). Accordingly, the ALJ did not err.

### C.      Janette Stringer, LCSW

As a licensed clinical social worker Stringer, is not considered an "acceptable medical source" under the Act; accordingly, the applicable legal standard is the equivalent of a lay witness, or "other source." *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); SSR 06-03P, 2006 WL 2329939 at *3 (Aug. 9, 2006); *Delegans v. Berryhill*, 766 F. App'x 477, 480 (9th Cir. 2019) (treating LCSW as an "other source"). Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053).

The ALJ accorded "little weight" to Stringer's statement.  The ALJ first emphasized that "[w]hile the claimant's mental health treatment records document ongoing situational stressors related to familial relationships, this does not necessarily suggest that she would have marked limitations in all areas of social functioning."  Tr. 18.  Given that, as discussed above, the ALJ did not err in discounting plaintiff's credibility concerning her subjective complaints on the basis they were caused by situational stressors, the ALJ also did not err in rejecting Stringer's opinions on this basis.  *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 694 (9th Cir. 2009) (holding when an ALJ has given clear and convincing reasons for discounting a plaintiff's subjective symptom testimony and rejects similar lay witness testimony, "it follows that the ALJ also gave germane reasons for rejecting her testimony").

Additionally, the ALJ discounted Stringer's opinion because it was "[in]consistent with the record as a whole[,]"pointing to evidence that plaintiff "had denied having any difficulties getting along with others."  Tr. 18; *see* Tr. 273.  In her Function Report, plaintiff stated she gets along "very well" with authority figures, adding, "I am a great communicator and take direction well if things are calm" and also that she has never been fired or laid off from a job because of problems getting along with other people.  Tr. 273.  This is a germane reason to discount Stringer's opinion.  *See Magallanes*, 881 F.2d at 751-52 (holding ALJ may reject a treating physician's opinion where it conflicts with other objective evidence, testimony from claimant, or other conflicting evidence); *see also Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (holding ALJ may discount treating physician opinion based on claimant's properly discounted self-reports).  Moreover, to the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts between plaintiff's self-reports and Stringer's opinions.  *See Morgan*, 169 F.3d at 599-600.

The ALJ also cited evidence that "claimant has been able to interact appropriately with her various healthcare treatment providers" as inconsistent with Stringer's opinions.  Tr. 18; *see* Tr. 373, 377, 420, 460, 487, 501, 596 (treatment notes describing plaintiff as "pleasant" or "cooperative").  The fact that plaintiff can compose herself enough to attend medical appointments is not necessarily inconsistent with Stringer's finding that plaintiff is limited in her ability to interact with others in a work setting.  *See Danny E. F. v. Commr. of Soc. Sec.*, 2:19-CV-0857-DWC, 2020 WL 729207, at *5 (W.D. Wash. Feb. 13, 2020) ("The ALJ failed to explain how Plaintiff being cooperative/pleasant at appointments is inconsistent with Dr. Fligstein's opinion that Plaintiff would have moderate difficulties responding to usual stressors encountered in a competitive work environment.").  Nevertheless, the ALJ articulated two germane reasons that were supported by substantial evidence and, accordingly, did not err by discounting Stringer's "other source" opinion.  *See Valentine*, 574 F.3d at 694 (holding a single germane reason is sufficient).

## III.   The RFC and the Hypothetical Provided to the VE

Plaintiff contends the ALJ erred in failing to account for all of her limitations in the RFC and the hypothetical posed to the vocational expert, specifically by failing to adequately account for the social limitations assessed by Dr. Khaleeq.  Pl. Br. 7-8.

The RFC is the most a person can do, despite her physical or mental impairments.  20 C.F.R. §§ 404.1545, 416.945.  In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  *Id.*; SSR 96-8p, *available at* 1996 WL 374184.  In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete

functional limitations in the RFC.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.

2008).  Only limitations supported by substantial evidence must be incorporated into the RFC

and, by extension, the dispositive hypothetical question posed to the VE.

In July 2016, plaintiff was referred for a consultative examination with Dr. Khaleeq, who

diagnosed recurrent major depressive disorder, posttraumatic stress disorder ("PTSD"), and

depression due to another medical condition.  Tr. 488.  Dr. Khaleeq opined that plaintiff could

perform simple and repetitive tasks but "may get distracted doing detailed and complex tasking";

she "might have difficulty accepting instructions from supervisors and interacting with the

public"; she "may take a little longer to complete work activities in a normal workday"; and she

"might have difficulty maintaining attendance in the workplace" and the "usual stress in the

workplace could further aggravate her psychiatric condition."  Tr. 488-89.

Plaintiff argues that, despite crediting Dr. Khaleeq's opinion regarding plaintiff's

"cognitive and social limitations," including that plaintiff "might have difficulty accepting

instructions from supervisors," the ALJ accounted for no limitation in this area in either the RFC

or the hypothetical posed to the VE.  Pl. Br. 8 (citing Tr. 15-16, 62).

However, the ALJ only accorded "some weight" to Dr. Khaleeq's opinion "in terms of

cognitive and social limitations."  Tr. 19.  The ALJ also made detailed findings that based on

evidence of plaintiff's activities of daily living, "she is not as limited in her ability to adapt and

manage herself as assessed by Dr. Khaleeq."  *Id.*

Moreover, an ALJ is not required to accept an equivocal opinion.  *See Mitchell v. Astrue*,

2010 WL 1486475, at *9 (C.D. Cal. March 3, 2010) (holding an ALJ may properly discredit a

treating physician's finding for being equivocal, unsupported by clinical findings, and

contradictory to the physician's own previous findings) (citing *Batson*, 359 F.3d at 1195).

Because Dr. Khaleeq's opinion includes the word "might," it is equivocal rather than definitive. *Rogers v. Comm'r of Soc. Sec. Admin.*, 490 F. App'x 15, 17 (9th Cir. 2012) (holding ALJ properly found the opinion that the plaintiff "*might* be unable to deal with the usual stress encountered in the workplace" was equivocal) (emphasis added).  An ALJ is not required to mention equivocal opinions—only concrete ones.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("The ALJ translated Stubbs–Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'  This does not, as Stubbs–Danielson contends, constitute a rejection of Dr. McCollum's opinion.").  Therefore, the ALJ did not err by not including this work-related social limitation in the RFC.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED  November 30, 2020.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge